[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a petition for a declaration of rights and injunctive relief brought by the plaintiffs pursuant to § 9-30-1 et seq. R.I.G.L.
The plaintiffs are the Rhode Island Federation of Teachers suing by and through its President and Secretary and some thirteen (13) individually named teachers who are all alleging to be directly affected by certain legislative enactments and a Directive issued by the Acting Director of the State Employees' Retirement System on May 20, 1993 pertaining to the reporting of deferred salary data for schoolteachers retiring prior to June 30, 1994.
The defendants are the Employees' Retirement System of the State of Rhode Island and JoAnne Flaminio in her capacity as Executive Director thereof.
The plaintiffs in their Amended Complaint allege that a directive issued by James M. Reilly in his former capacity as Acting Director of the State Employees' Retirement System on May 20, 1993 to all school superintendents regarding the reporting of deferred salary held for schoolteachers retiring prior to June 30, 1994 constituted an unlawful taking of property rights without due process of law and was otherwise unlawful when viewed in light of certain statutory provisions pertaining to schoolteachers' compensation and retirement benefits. (§16-16-1(10); § 36-8-1(11); § 36-10-10.4 R.I.G.L.
The defendants deny any unlawful "taking" on their part, and question the standing of the plaintiffs to bring the instant petition both on procedure as well as substantive grounds.
The plaintiffs will hereinafter be referred to collectively as the Teachers and the defendants as the Employees' Retirement System.
The crux of the apparent dispute here between the parties appears to have been generated by the enactment of what is now §36-10-10.4 R.I.G.L. That law is the coalescence of Chapters 129and 174 P.L. 1991. In that 1991 legislation, made retroactive to January 1, 1991, all state employees, including schoolteachers were, because of the then existing State financial crunch and shortfall subjected to temporary salary deferrals and reductions. Such deferrals could however be picked up by any affected State employee at a later time, or upon his or her retirement from State service. § 36-10-10.4 was enacted for the purpose of protecting the regular annual compensation rate of any state employee, including schoolteachers, who might elect to retire within three years of the salary deferral program. That 1991 statute provided that if such retirement did take place, the deferred amount taken from that employee teacher's annual salary would not serve to reduce the retiring schoolteacher's actual regular amount of annual compensation or salary for the purpose of establishing or calculating the schoolteacher's highest three consecutive years of compensation upon which retirement benefits would be based. § 36-8-1(11) R.I.G.L.
What appears to have served as the cogitation for the instant declaratory relief petition is a directive issued and sent out to the various in-state school superintendents on May 20, 1993. A copy of that directive is attached to this decision and made a part hereof. Unfortunately, as the result of what appears to be an invert reading of that directive by the plaintiffs, they conceived it to be intended for purposes of unlawfully depriving them of some property or property right without due process of law. A more relaxed and impartial reading of that directive however reveals it to be simply intended to insure compliance with § 36-10-10.4 and the proper calculation of a schoolteacher's retirement service allowance or pension. There is no calculated scheme in that directive, as it pertains to the plaintiffs. It was nothing more than a reminder to each school superintendent to furnish the necessary deferred salary information to the State Retirement Board so that total compliance with § 36-10-10.4 could be effectuated for any schoolteacher or other state employee retiring prior to June 30, 1994, and to permit that schoolteacher or other state employee to pay the required retirement contribution on the amount of previously deferred salary, and thus pick up the retirement time worked credit represented by the deferred amount of salary. The May 20, 1993 Directive was both proper and legal and in no way unlawfully deprived the plaintiffs of anything which this Court is able to determine from the pleadings and case file. No unlawful "taking" took place. The State Retirement Board pursuant to § 36-8-2 and § 36-8-3 R.I.G.L. was charged with the specific responsibility for performing the action complained of in the May 20, 1993 directive from its Acting Director. Schoolteachers are specifically included to be part of the State Retirement System which is administered by the State Retirement Board. § 16-16-23 R.I.G.L.
The plaintiffs in their amended petition for a declaration of rights next requests this Court to make a declaration and finding that § 16-16-1(10) and § 36-8-1(11) R.I.G.L. when considered with the express short term application of § 36-10-10.4, namely January 1, 1991 and terminating June 29, 1994, would require the State Retirement Board, from and after June 29, 1994, to consider the payment of any deferred salary to any State employee or schoolteacher retiring after June 30, 1994 as constituting part of the total annual compensation for the year in which the deferred salary is paid. The effect of that action would of course serve to bloat and distort the retiring schoolteacher's annual salary and consequently result in an increase of the teachers' retirement benefit. This Court cannot attribute to the General Assembly an intention to permit such pension padding by virtue of § 36-10-10.4 for those schoolteachers who may retire after June 29, 1994. That legislative act, like for example, the calculation of retirement benefits for State judges and other State employees who were part of the 1991 financial crunch salary deferral plan (§ 8-3-18 R.I.G.L.) was to protect the rate of established annual compensation for retirement benefit purposes, and not to permit retirement benefit bloating. This Court in construing the statute here in contention is required to establish and give effect to the intent of the legislature when it enacted § 36-10-10.4 In re Barnacle 623 A.2d 445, 450 (R.I.1993). That intention, as previously noted, was not to require the State Retirement Board from and after June 29, 1994 to treat and consider any accrued amount of deferred salary as constituting part of a schoolteacher's established annual total compensation for the year in which the schoolteacher elects to receive the deferred salary amounts. The term "compensation" as defined in § 36-8-1(11) R.I.G.L. is totally consistent with, and compatible with the construction afforded this Court's interpretation of the statutes in question.
The parties shall submit an appropriate judgment for entry by the Court within ten days.
[EDITORS' NOTE: ADDRESS IS ELECTRONICALLY NON-TRANSFERRABLE.]
May 20, 1993
TO: ALL SCHOOL SUPERINTENDENTS
We have sent a questionnaire to all school superintendents regarding a deferral of salary for teachers. To be consistent with our policy, we are asking all school departments to:
1. When your school department has a deferral of salary, pleasedo not take deductions from this deferral when the teacher receives this money.
2. Send to us one month before the teacher's retirement a letter stating the school year of the deferral and the amount of money that was deferred. Retirement will allow the teacher to purchase this amount if it is part of their three-year average salary.
In this way, we can be sure that the teacher's three-year average salary is correct and meets the law.
Sincerely,
James M. Reilly Acting Director
PLEASE FORWARD THIS MEMO TO AND/OR MAKE YOUR PAYROLL OFFICE AWARE OF THIS POLICY